Wanda J. Novak and Theresa Pissano, Appellees, v. Illinois Central Railroad Company, Appellant.

Gen. No. 44,212.

Opinion filed April 21, 1948. Rehearing denied May 7, 1948. Released for publication May 7, 1948.

JOHN W. FREELS and ROBERT C. LIND, both of Chicago, for appellant; VERNON W. FOSTER, CHARLES A. HELSELL and HERBERT J. DEANY, all of Chicago, of counsel.

FREEMAN & FREEMAN, of Chicago, for appellees; BENJAMIN NELSON, NATHAN ENGELSTEIN and EARL FREEMAN, all of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Wanda J. Novak and Theresa Pissano filed a complaint in the superior court of Cook county against the Illinois Central Railroad Company and the City of

Chicago to recover damages for personal injuries suffered in a collision on January 9, 1944. A trial resulted in a "not guilty" verdict as to the city, and a verdict for both plaintiffs against the railroad company. Plaintiffs did not seek a new trial as to the city. A new trial was granted to the defendant. The second trial resulted in verdicts in favor of Wanda Novak for $5,000 and in favor of Theresa Pissano for $750. Motions by defendant for directed verdicts, for judgment notwithstanding the verdicts and for a new trial were overruled and judgment was entered, from which defendant appeals.

On Sunday, January 9, 1944, Theresa Pissano was visiting at the home of her friend Wanda Novak, at 11930 Lowe avenue, Chicago. At about 5:00 p.m. they drove to 2200 Davis street, Blue Island, to visit Mrs. Novak's mother. After supper they left in the Chevrolet sedan of plaintiff Novak, who was driving. Miss Pissano was sitting alongside of her in the front seat. They were on their way from Blue Island to the Roseland Bowling Alleys and drove north on Halsted street. They turned east at 122nd street to avoid traffic, intending to go north on Wentworth avenue to 115th street. Without realizing it, they turned north at La Salle street and after driving one block north, drove off the end of the pavement into a barricade of steel rails. Both Wentworth avenue and La Salle street run in a northerly and southerly direction. Wentworth avenue is one block west of La Salle street. Defendant's single track Blue Island branch railroad was built south of and parallel to the paving on 121st street. The ground south of the tracks was covered with grass and weeds. A power line south of the tracks does not belong to the defendant. The barricade was 33 feet long and consisted of four steel rails buried in the ground, with two steel rails welded across. The barricade, located on defendant's right-of-way, was 28 feet north of the end of the pavement

on La Salle street, and almost directly under the power line. The ground at the barricade was 9 inches higher than the pavement on La Salle street. The railroad tracks were higher than the ground at the barricade. The barricade was 3 feet 6 inches above the ground level and 4 feet 3 inches above the pavement on La Salle street. A similar barricade was located north of the tracks separating them from the paved roadway on the north side of 121st street.

Frank Madon, a witness called by plaintiffs, testified that the barricade was rusty and unpainted; that there were no reflectors, lights "or anything else" thereon or in the area to indicate that it was there; and that there were no skid marks adjacent to the barricade. Two Accident Prevention Bureau police officers testified that the two photographs introduced by defendant correctly represented the physical conditions found just after midnight, including the painting and stripes on the barricade. They testified further that the unpaved ground adjacent to the barricade was hard and frozen, it having snowed previously; that there were no reflectors, lights or signals or other warning device on the barricade or in the area adjacent thereto; and that just south of the barricade the area was dark. Defendant's witness, William H. Brown, testified that he saw the barricade the morning after the occurrence and that the painting of the rails on the barricade was then in the same condition as shown on one of defendant's exhibits.

Plaintiffs testified that they did not see the barricade before they struck it; that it was drizzling and misty; that the streets were damp; that they were looking straight ahead; that the windshield wipers were operating; that the headlights were on; and that they had a clear view ahead for 200 feet. They said that they were not familiar with the neighborhood; that La Salle street appeared to be a through street; that the barricade was not visible; that they did not

see it prior to the impact; that there were no reflectors, lights or warning device of any description on the barricade; and that they did not feel any sensation when they rode from the pavement onto the ground. The police officers interviewed plaintiffs at about midnight. Plaintiff Novak testified that she knew she would cross a railroad track one block north of 122nd street; that she was driving 15 to 20 miles an hour after turning on to La Salle street; that at that speed she could stop in 3 or 4 feet; that she came to a full stop before turning from 122nd street; that the car was still in second gear when it hit the barricade; that she did not put on the brakes; and that the car did not skid. Miss Pissano testified that she was not conscious at any time of the car's slowing down or skidding. One of the officers testified that when they examined the scene of the occurrence shortly after midnight there were skid marks which started about 25 feet south of the end of the pavement, continued up the pavement into the grass and weeds, and were noticeable right up to the rear of the automobile. The other officer testified that there was a skid mark about 25 feet long on the concrete, which continued across the dirt and up to the barricade. Plaintiffs' witness Madon testified that he examined the scene right after the crash, saw no skid marks, and that there was "a little tire track" in the frost on the street.

Both plaintiffs testified that they left the home of Mrs. Novak's mother at about 8:00 p.m.; that they did not stop or visit anywhere and that the mishap occurred about 8:15 to 8:30 p.m. Plaintiff Novak stated that they remained unconscious in the car for about two hours, when she "came to" and got help from Madon. The latter testified that "late in the evening" he heard an "awful noise"; estimated that it was then about 10:15 p.m. and that the two girls came into his home about five minutes later. According to the officers, Mrs. Novak stated that the mishap

occurred about 10:30 p.m. A statement written out by the police officers bore the signature of Miss Pissano. Defendant's witness, William H. Brown, testified that he had been signal maintainer on the Blue Island branch line from 1911 to 1917 and again from 1926 to the time of the trial; that he goes over the entire route either walking or riding about three times a day; that he was riding west in the front vestibule of a Blue Island train and passed La Salle street about 7:35 on the morning of January 10, 1944; that he rode the front end to observe the condition of the signals along the right-of-way; that as he approached La Salle street he saw an automobile against the barricade; that he returned about noon, walking the right-of-way; that when he arrived at La Salle street the automobile had been removed; and that he examined the place where he had seen it wedged between the second and third rails and found that the rail was slightly bent. One of the police officers also described the automobile as being between the second and third posts, headed slightly northeast. The other officer described the automobile as being wedged up against the barricade.

There was an open prairie on each side of La Salle street for the last 200 feet. The sidewalks on each side of La Salle street extended about 14 feet beyond the end of the pavement. The street light at the southeast corner of the intersection was out on the night of the occurrence. Madon stated that there was another street light on the northwest corner immediately across from his house. Mrs. Novak was examined by Dr. Robert Reich about 2:00 a.m. on January 10, 1944. He ordered her to the Roseland Community Hospital, where she remained three weeks and had a bill of $200. He found a brain concussion and injuries to the face and both legs. X-rays showed a fracture of the knee cap, but no other fractures. The cuts were not sutured. He testified she had severe pain in the abdomen, used crutches for two months, and still has a twitching

oscillation in the eyes. His bill was $110. She testified that she lost ten weeks from work at the Studebaker plant, where she earned $70 a week. She then returned to the same job at the same pay and stayed until the plant closed a year later. Miss Pissano had cuts two inches long on the left leg and on the head above the hair line. She was treated four times by Dr. Florian G. Ostrowski, whose bill was $50. She lost three weeks from work at the Studebaker plant, where she earned $70.15 a week.

Defendant maintains that there was no evidence that it was guilty of any negligence which proximately contributed to plaintiffs' injuries; that the negligence charged was not the proximate cause of their injuries, since at most it furnished a condition which made possible the injuries through the subsequent independent intervening act of a third person; and that consequently the court erred in refusing its motions for directed verdicts and for judgment notwithstanding the verdicts. Plaintiffs assert that it is a well established rule of law that where a case has been twice tried and two juries have found the issues the same way for the same parties, a court of review will not disturb the second consistent verdict as being against the manifest weight of the evidence; that there is abundant evidence in the record of defendant's negligence which was the proximate cause of their injuries; that the evidence amply sustains the verdicts; that defendant's negligence was the proximate cause of the injuries; that the question of what was the proximate cause of the injuries is one of fact for the jury; and that assuming that the city was also negligent and that such negligence contributed to the injuries, nevertheless the defendant is liable since plaintiffs may elect to sue either or both of two joint tortfeasors. In *Wayne v. Freeport Motor Casualty Co.*, 329 Ill. App. 185 (abst.) the court said: "There is no invariable rule that we will not reverse a second time for the

reason that a verdict is manifestly against the evidence.'' The rule sought to be applied by plaintiffs, that a court of review will not disturb the second consistent verdict as being against the manifest weight of the evidence, cannot be invoked to refute defendant's contention that there was no evidence to sustain plaintiffs' case.

We are called upon to decide whether, as a proposition of law, the trial court erred in refusing to direct a verdict against plaintiffs. By a motion to direct a verdict at the close of all the evidence, the sole question is whether, admitting the evidence in favor of plaintiffs to be true, that evidence, together with all legitimate conclusions and inferences, fairly tends to sustain their cause of action. By a motion for judgment notwithstanding the verdict the same question is again presented and the same test applied as in deciding a motion for a directed verdict at the close of all the evidence. In deciding these motions the court has no right to pass upon the credibility of the witnesses, to consider any purported impeachments, the weight thereof, or the weight of the testimony, since the motions admit the evidence in favor of plaintiffs to be true, together with all legitimate conclusions and inferences. *Vieccli v. Cummings*, 322 Ill. App. 559. In determining the points urged we have adhered to these rules.

From a careful study of the transcript we are satisfied that there was no evidence that defendant was guilty of any negligence which proximately contributed to the injuries sustained. It is conceded that the barricade was erected, controlled and maintained by the defendant on its right-of-way and that there was no reflector, light or other device to give warning thereof. The evidence, taken in its most favorable aspect in support of plaintiffs' action, shows that the barricade was rusty and unpainted on the night of the occurrence. The engineer who prepared

the plat after a survey on the ground testified that it was 28 feet from the end of the pavement on LaSalle street to the barricade and that the ground at the barricade was 9 inches higher than the pavement. The street and right-of-way were not dangerous to anyone driving in La Salle street. Defendant had no control over La Salle street, was not responsible for making it "reasonably appear to be a public highway," nor can it be charged with negligence because the street light was out, or because there were no advance signs warning of the dead end street. There was no negligence in the location of the barricade. A similar barricade is located north of the tracks. There La Salle street is opened up from the north and it could be anticipated that people would drive into 121st street from the north and turn either way. The barricade on the north was separated from the pavement by only 3 feet of gravel, whereas the barricade complained of was located 28 feet from any point where traffic might be expected. The top of the barricade was 4 feet 3 inches above the pavement. The two police officers, approaching the barricade shortly after midnight, testified that they saw it when 150 to 200 feet away. We are satisfied from the record that the barricade was visible at reasonable distances to anyone driving on La Salle street.

We agree with defendant that if the record contained evidence of negligence on its part, the occurrence was one which could not have been reasonably anticipated. The owner of land is not required to foresee and guard against mishaps resulting from unusual and unexpected occurrences which could not have been reasonably anticipated. Defendant was not required to anticipate that a driver with good lights would not see a barricade which everyone else could see at 150 feet or further, and was not required to anticipate that anyone who could stop her car in 3 or 4 feet would drive so recklessly or with such com-

plete oblivion to the circumstances as to leave the pavement and travel upgrade for 28 feet without knowing that she had left the pavement. In *Atchison, T. & S. F. R. Co. v. Calhoun,* 213 U. S. 1, the court said (9):

"But even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that 'if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock on Torts, 8th ed., 41."

At most the barricade created a condition by which the mishap was made possible through the subsequent independent intervening acts of others and neither the existence or condition of the barricade was the proximate cause of the mishap. The mere existence of the barricade located 28 feet from the nearest point of highway traffic had nothing to do with causing the plaintiffs to leave the highway. At most it was a condition which made the injuries possible through the negligence of either or both the city and the plaintiffs. In *Briske v. Village of Burnham,* 379 Ill. 193, the court said (199):

"If a negligent act or omission does nothing more than furnish a condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. . . . The cause of an injury is that which actually produces it,

while the occasion is that which provides an opportunity for the causal agencies to act."

Plaintiffs urge that assuming the city was also negligent and that such negligence contributed to the injuries, nevertheless the defendant cannot relieve itself since plaintiffs have a right of election to sue either one or both of two joint tortfeasors. We agree with this statement. However, it is not applicable to the factual situation before us because the defendant was not guilty of any negligence which proximately contributed to the injuries sustained. We find that there is no evidence in the record to show that defendant was guilty of any negligence which proximately contributed to the injuries sustained, and that the barricade at most created a condition by which the mishap was made possible through the subsequent independent intervening acts of others, and that neither the existence nor the condition of the barricade was the proximate cause of the mishap. It was the duty of the court to direct a verdict for the defendant.

The judgment of the superior court of Cook county is reversed and the cause remanded with directions to enter judgment for the defendant and against plaintiffs.

*Judgment reversed and cause remanded with directions.*

LEWE, P. J., and KILEY, J., concur.