Matilda Johnston, Individually and Executrix of Estate of James P. Johnston, Deceased, Appellees, v. City of East Moline, Appellant.

Gen. No. 10,330.

Opinion filed July 7, 1949. Released for publication July 27, 1949.

BEN A. STEWART and ROY H. GLOCKHOFF, both of East Moline, for appellant; BEN A. STEWART, of East Moline, of counsel.

EAGLE & EAGLE, of Rock Island, for appellees.

MR. JUSTICE DOVE delivered the opinion of the court.

Matilda Johnston individually and as executrix of the estate of her husband, Doctor James P. Johnston, deceased, filed her complaint at law in the circuit court

of Rock Island county, against the defendants City of East Moline, a municipal corporation, and James L. Thompson. The defendant, James L. Thompson was, upon motion, granted a severance and. the case proceeded to trial against the defendant, City of East Moline.

Plaintiff brought her suit to recover for personal injuries suffered by herself and also to recover damages for the wrongful death of her husband. The liability of the city was predicated upon the alleged negligence of the city in its failure to maintain in a proper state of repair traffic signals at the intersection of Seventh street and Seventeenth avenue in the City of East Moline. The complaint specifically charged that the city on and prior to February 23, 1945, through its agents and employees, had the possession, control and maintenance of the various streets, avenues and intersections in the city, including the various traffic signs, lights and signals connected with and appurtenant to said streets, avenues and intersections, including the intersection and traffic lights at the intersection of Seventh street and Seventeenth avenue in said city; that it was the duty of said city, its agents and employees to exercise reasonable care in its maintenance of the said streets, intersections and traffic signs; that in violation of this duty the city, its employees and agents, on and for approximately a week prior to February 23, 1945, failed to have any stop sign or stop light directing traffic entering the intersection at Seventh street and Seventeenth avenue from the east on Seventeenth avenue to stop; that at the same time the city, its agents and employees, maintained, operated and controlled a traffic light facing traffic entering said intersection from the north on Seventh street so that said traffic light at times was green and constituted an invitation to enter said intersection; that the city, its agents and employees, knew of the aforesaid dangerous condition; that plaintiff Matilda Johnston on or about the hour of 10:00 o'clock on the eve-

ning of February 23, 1945, was riding in a car driven by her husband in a southerly direction on Seventh street in said city and approached said intersection from the north; that plaintiff and her husband were in the exercise of due care; that her husband in pursuance of the invitation to enter said intersection extended by said traffic light facing north, said traffic light showing green, drove his car into said intersection; that by reason of the failure of the said city, its agents and employees, to have any stop sign or stop light to control traffic entering said intersection from the east on Seventeenth avenue, the vehicle in which plaintiff and her husband were riding was violently struck by another vehicle entering said intersection from the east on Seventeenth avenue and as a direct result thereof, plaintiff suffered injuries and her husband received injuries which resulted in his death.

The answer of the defendant denied the allegations of negligence and affirmatively set up the defense that in the maintenance and operation of the traffic lights and signals in question, defendant was acting in a governmental capacity, performing governmental functions and hence incurred no liability.

As will be seen from the foregoing, the substance of the plaintiff's complaint is that the defendant city was negligent in allowing one traffic signal to remain in a state of disrepair for a period of about a week preceding the collision at the intersection which resulted in injuring the plaintiff and causing the death of her husband, while at the same time permitting the other three signal lights to continue to operate at said intersection, all of which created a trap whereby persons approaching the intersection from the north were invited into the intersection by a green light, while at the same time there was no warning of any kind facing persons driving into the intersection from the east.

The cause was tried before a jury resulting in a verdict in favor of the plaintiff as an individual for $25 and as executrix of her husband's estate the sum of

$2,000. The motion of the defendant for judgment notwithstanding the verdict, was denied and judgment was entered on the verdicts and this appeal by the defendant follows.

The evidence in this case established that Seventeenth avenue in East Moline runs in an east and west direction, that Seventh street runs in a north and south direction and that the city had installed automatic electric traffic devices of red, yellow and green lights mounted on posts on each of the four corners of the intersection. The lights on these signals were shaded so that each light faced in one direction only and was visible only in the direction of the approaching traffic for which it was installed and maintained for the purpose of controlling. The post or standard at the northwest corner of the intersection was knocked down and the signal broken on February 18 by a third person driving his truck into the same. The traffic signal thus knocked down controlled the traffic entering the intersection from the east on Seventeenth avenue. The city promptly removed the post or standard together with the signal that was knocked down and ordered repairs for the same. The city permitted the other three traffic lights facing the traffic entering the intersection from the north, west and south to operate without taking any action to remedy the defect caused by the absence of the signal at the northwest corner. The city had notice of this condition and allowed the same to remain for five nights and six days. Seventeenth avenue is a main street through the City of East Moline and carries a heavy volume of traffic and the traffic using Seventeenth avenue from the east was thus without any control. The traffic on Seventh street, while local in character between the business district and the residential district, was also heavy. This traffic was subject to the usual control afforded by the traffic signals and lights at the southwest corner and the northeast corner of said intersection. It also appears from the

evidence that a number of collisions occurred at this intersection prior to the time of the accident involving the plaintiff and her husband.

James L. Thompson, the defendant who was granted a severance, entered said intersection from the east and as stated, the plaintiff's car entered said intersection from the north. The two cars collided in the intersection. Dr. Johnston was hurled out of his car and onto the pavement, which rendered him unconscious. While he was lying on the pavement, a car following the one which collided with his car, came into the intersection from the east and ran over his legs. He was removed to the hospital where he remained for about ten days. Afterwards he was at home for several weeks and then he attempted to resume his medical practice gradually. He was not able for long to continue his practice and on June 19, 1945, he died. An autopsy was performed, which disclosed a blood clot in his brain of about three inches in diameter. The physician who examined this blood clot testified that it was the result of trauma and was of the type which develops over a space of three or four months. Plaintiff's own personal injuries were slight.

The legal question presented to this court for determination is whether or not a municipality in the construction, maintenance and operation of electric traffic signals is engaged in a governmental function or in a corporate or proprietary function. If a municipality in the operation of traffic signals is engaged in a governmental function, then it is immune from tort liability, while on the other hand, if the installation, operation and maintenance of traffic signals is a corporate function, a municipality is liable for negligence in failing to keep its traffic signals in a proper state of repair. This precise question has never been passed upon directly by courts of review in this State but cases involving somewhat analogous questions have been frequently passed upon by our courts. The ap-

plication of the rules of law governing a case of this character is difficult, and this difficulty has resulted in a great number of decisions in this State and in other states which cannot be reconciled.

Our Supreme Court notes this situation in the recent case of *Gravander v. City of Chicago*, 399 Ill. 381, when it analyzed the problem as follows:

"To attempt to point out the divergent views in the many cases cited in the briefs of the parties to this lawsuit would unnecessarily extend this opinion and would rather present further confusion and conflict. It is safe to say the line between municipal operations that are proprietary and therefore a proper subject of suits in tort, and those that are governmental and therefore immune from such suits, is not clearly defined. Powers and functions held to be governmental or public in one jurisdiction are sometimes held to be corporate or private in another, and it has often been said that it is impossible to state a rule sufficiently exact to be of much practical value in deciding when a power is public and when private. As has been said in the case of *Trenton v. New Jersey*, 262 U. S. 182, 43 Sup. Ct. 534, 'The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the recognition of technical defenses based upon the governmental character of such corporation.'"

It is well established in this State and in many other states that the regulation of traffic by a municipality upon the public streets under the police power conferred upon it by the legislature is the exercise of a governmental function as to which the city is not liable for misuser or nonuser. *Evans v. City of Kankakee*, 231 Ill. 223; *Hanrahan v. City of Chicago*,

289 Ill. 400; *Roumbos v. City of Chicago,* 332 Ill. 70; *Gebhardt v. Village of LaGrange Park,* 354 Ill. 234; *City of Evanston v. Wazau,* 364 Ill. 198. It is also equally well established that this exemption given to a municipality does not extend to damages resulting from a failure to keep the public streets of the municipality in a reasonably safe state and free of dangerous conditions or obstructions. *Roumbos v. City of Chicago,* 332 Ill. 70; *Village of Palestine v. Siler,* 225 Ill. 630; *Koch v. City of Chicago,* 297 Ill. App. 103; *Caruso v. City of Chicago,* 278 Ill. App. 247; *Wells v. Village of Kenilworth,* 228 Ill. App. 332; *Huyler v. City of Chicago,* 326 Ill. App. 555; *Bedtke v. City of Chicago,* 240 Ill. App. 493.

We believe that in the principles announced in the case of *Roumbos v. City of Chicago, supra,* can be found the correct solution to the question presented here. In the *Roumbos* case a four-year-old girl was burned so severely that she died as a result of the negligence of a streetsweeper in starting a fire to a pile of rubbish located in the street. In holding the city liable in that case the court said:

"The division of municipal functions into public and governmental on the one hand and private and corporate on the other, is not well defined but is vague and indefinite. No definition of the terms has been declared which is of much practical value or 'which will precisely embrace torts for which a civil action will lie, in the absence of a statute declaring the liability against a municipal corporation.' (4 Dillon on Mun. Corp., 5th ed., sec. 1625.) It has been said that all that can be done with safety is to determine each case as it arises. . . .

"It has always been the doctrine of this court that while the legal obligation of a city to construct gutters and sewers is one which is voluntarily assumed, yet having assumed the obligation and constructed these

improvements for the benefit of the public it then becomes the duty of the city to see that they are kept in repair. (*City of Chicago v. Seben,* 165 Ill. 371; *City of Alton v. Hope,* 68 id. 167; *City of Chicago v. Gallagher,* 44 id. 295; *City of Lacon v. Page,* 48 id. 499.) Section 1 of Article 5 of the Cities and Villages act confers power over the streets and other public places upon the city council, as follows:

" 'Seventh. To lay out, to establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, wharves, parks and public grounds, and vacate the same. . . .

" 'Eighth. To plant trees upon the same.

" 'Ninth. To regulate the use of the same.

" 'Tenth. To prevent and remove encroachments or obstructions upon the same.

" 'Eleventh. To provide for the lighting of the same.

" 'Twelfth. To provide for the cleansing of the same.

" 'Thirteenth. To regulate the openings therein for the laying of gas or water mains and pipes, and the building and repairing of sewers, tunnels and drains, and erecting gas lights.'

"Under these clauses of the statute we have held the city liable for negligence in the construction of a sewer, (*City of Chicago v. Seben, supra*) in the construction of a city Hall. (*City of Chicago v. Dermody,* 61 Ill. 431; for a bridge tender's negligence in setting the machinery of the bridge in motion whereby the plaintiff was caught in the machinery and injured. (*Gathman v. City of Chicago,* 236 Ill. 9); in the maintenance of electric wires used in lighting the streets, (*Stedwell v. City of Chicago,* 297 Ill. 486; in lighting a street (*City of Freeport v. Isbell,* 83 Ill. 440); in removing an awning which constituted an obstruction to the

street (*Hanrahan v. City of Chicago,* 289 Ill. 400). In *Johnston v. City of Chicago, supra,* the city was held liable for the negligence of the driver of an automobile used in the delivery of books from the Chicago Public Library to sub-stations in the city, resulting in damage to the plaintiff's automobile.

"The clauses which, have been quoted from section 1 of Article 5 of the Cities and Villages act all refer in the same way to the same subject—the care and maintenance of the streets. If in laying out, establishing, opening, altering, widening, extending, grading, paving or otherwise improving the street the city was in the exercise not of governmental functions but of a corporate or private function and was liable for an injury occasioned by its negligence, and if in removing an obstruction from the street it was liable, and if in the construction of sewers it was liable, and if in placing and maintaining electric wires for lighting the street it was liable for the negligence of its employees, no reason is apparent why it was not liable to a person injured by their negligence in planting trees upon the street, or stringing electric wires for lighting the street, or cleansing the street, under powers granted for the same purpose and in the same language.

"In this State the care of the streets and sidewalks, their lighting and maintenance, have always been held to be the corporate functions of the municipality, and the municipality has been held liable for the negligence of its employees in the performance of those functions which has resulted in injury to others. There is no difference in kind between these functions and the cleaning of the streets. All are provided for by the same statute in the same terms, and the same rule of liability should apply to all.

"It is argued that the great weight of authority in the decisions of the courts of final jurisdiction in other

states is contrary to the conclusion we have reached. We have not overlooked or failed to consider those decisions. Those denying the liability of the city are more numerous than those to the contrary, but in our judgment the view which we have expressed is sustained not only by our own decisions but by the better reason and is more just in its operation than the other view.''

It will be noted that the Supreme Court in the *Roumbos* case above quoted stated that the city need not install such improvements as gutters and sewers, but that once it does so it must keep them in repair. We believe the same is true in this case, that is the city need not have installed the signals at the intersection where the accident happened, but after having voluntarily done so, it was under the duty to keep them in repair, and we believe the evidence conclusively shows in this case that the city was guilty of negligence in permitting to exist for five days and six nights a condition so dangerous that collisions between motor vehicles could reasonably have been foreseen as a result of the fact that one of the traffic signals at the intersection was not in operation while the other three were. In *Koch v. City of Chicago*, 297 Ill. App. 103, the court very pointedly answered the contention that the city was acting in its governmental capacity in the maintenance of traffic signals when it observed:

''Municipalities, such as the city of Chicago, are charged with the primary duty of keeping their streets, sidewalks and parkways in a reasonably safe condition. *Budex v. City of Chicago*, 279 Ill. App. 410; *Simon v. City of Chicago*, 279 Ill. App. 80. This is not a limited duty, but it extends to any part or portion of the streets, sidewalks or parkways or portions immediate and adjacent thereto. *Caruso v. City of Chicago*, 278 Ill. App. 247. . . .

"In the instant case the maintenance of said signal lights was purely ministerial, and negligence pertaining thereto created a liability."

In that case, which is fairly close on the facts to this case, a boy was injured by some acid which was splashed upon him out of the base of a broken traffic signal. The signal light post had been knocked down and the city had allowed the same to remain down for a period of about ten to twelve days prior to the accident. The Supreme Court denied a petition for leave to appeal in that case. *Koch v. City of Chicago*, 297 Ill. App. XVI. In *Wells v. Village of Kenilworth*, 228 Ill. App. 332, a truck knocked down a light on a traffic island. Several nights later the plaintiff ran into the island because the light had not been repaired. The Appellate Court reversed a directed verdict for the municipality with the observation that cities are liable for negligence in failing to maintain their streets in a reasonably safe condition. In *Huyler v. City of Chicago*, 326 Ill. App. 555, the plaintiff was injured when he ran into a safety island and pole which were not adequately lighted or painted. The plaintiff recovered a judgment and on appeal the Appellate Court affirmed the same and stated that the city was under a duty to maintain the streets in a reasonably safe condition; that the city was "vested with the authority to devise and construct needed and necessary traffic guides and controls by virtue of the city's jurisdiction and control of the streets"; and that since the post was striped when erected the city had the responsibility of "keeping the post painted and clean so as to make it visible to those driving vehicles." The Supreme Court denied a petition for leave to appeal in this case. *Huyler v. City of Chicago*, 331 Ill. App. XIII. From the decisions in the *Koch, Wells* and *Huyler* cases *supra,* it will be noted that the defendant cities were held by the courts passing on those cases to be maintaining traffic

devices as a corporate function and not as a governmental one.

Counsel for defendant seek to distinguish cases of that character from this case in that they say that in the installation of traffic control devices municipalities are performing a public or governmental function because these traffic controlled devices are a substitute for a policeman and that if a policeman had been directing traffic at the time of the accident in this case, there would have been no liability because it is well established that a municipality is not liable for the negligence of its agents and servants in the exercise of its police powers. *Evans v. City of Kankakee*, 231 Ill. 223, 227. In Illinois, however, the fact that the installation of certain devices or controls is for the assistance or relief of a police department or of a fire department does not make the maintenance of such devices or controls a governmental function. In *Devine v. City of Chicago*, 213 Ill. App. 299, it was held that in maintaining and operating a police and fire alarm system, the city acts in its ministerial or corporate capacity and if the control or device (such as defective wiring) creates a dangerous condition in the streets, the municipality is liable. We believe that when the traffic control devices were erected at the intersection in question they became a mechanical structure appurtenant to the street and were not to be classified in the same category as a policeman. Certainly these mechanical devices exercise no discretion as does a policeman and this difference is a very reasonable basis for a distinction.

In reaching the conclusion that we have on this question we are fully cognizant of the fact that courts in other jurisdictions have reached contrary results. Some of these cases from other jurisdictions are: *Tolliver v. City of Newark*, 145 Ohio St. 517, 62 N. E. (2d) 357; *Avey v. City of West Palm Beach*, 152 Fla. 717, 12 So. (2d) 881; *Martin v. City of Canton*, 41 Ohio

App. 420, 180 N. E. 78; *Vickers v. City of Camden,* 122 N. J. L. 14, 3 A. (2d) 613; *Parsons v. City of New York,* 289 N. Y. Supp. 198, affirmed 273 N. Y. 547, 7 N. E. (2d) 685; *Auslander v. City of St. Louis,* 332 Mo. 145, 56 S. W. (2d) 778; *Dorminey v. City of Montgomery,* 232 Ala. 47, 166 So. 689; *Martin v. Winchester,* 278 Ky. 200, 128 S. W. (2d) 543. We have examined a number of these cases and while they are persuasive they are not binding on this court and we believe that they are contrary to the principles established in this State in the *Roumbos* case and in the traffic control device cases cited in this opinion. Many of these cases from foreign jurisdictions are decided on the proposition that a city is liable for the physical defects in a street and that physical defects do not include traffic lights and signals operating in a defective manner. It seems to us that there is no basis in logic for this distinction. A physical fact was present in the green light facing the plaintiff and her husband in this case and inviting them to drive into and through the intersection. We are of the opinion that once the traffic lights were installed that the maintenance and operation of them should be on the same basis as the maintenance of any other structure or device affecting the street or its safety. Certainly it would not have been difficult for the city to have corrected the dangerous condition which it permitted to exist at this intersection for nearly a week. The city was under the duty, we believe, to remove the hazard created at this intersection by the knocking down of the traffic control device. It could have done this by simply turning off the other lights or setting the remaining lights so as to operate as yellow flash signals or as red flash signals, which the evidence shows would have been possible.

The second and only other point advanced by the defendant is that the direct and proximate cause of the injuries to the plaintiff and her husband was the collision between the automobiles of plaintiff and the

defendant who was granted a severance, James L. Thompson. Specifically it is contended that even though it be assumed that the record discloses actionable negligence on the part of the City of East Moline, the intervening act of James L. Thompson was the proximate cause of the injuries suffered. Some of the cases cited in support of this contention are *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 316; *Berg v. New York Cent. R. Co.*, 391 Ill. 52; *Novak v. Illinois Cent. R. Co.*, 334 Ill. App. 241. We have examined these cases. The test laid down by the court in one of the cases cited by defendant in support of its position is; ''The test that should be applied in all cases in determining the question of proximate cause is whether the first wrongdoer might have reasonably anticipated the intervening cause as a natural and probable result of the first party's own negligence.'' *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 317.

 The test to determine what constitutes proximate cause is further explained by our supreme court in *Neering v. Illinois Cent. R. Co.*, 383 Ill. 366 where the court at page 380 says:

''What constitutes proximate cause has been defined in numerous decisions, and there is practically no difference of opinion as to what the rule is. The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act. (*Illinois Central Railroad Co. v. Oswald*, 338 Ill. 270; *Hartnett v. Boston Store of Chicago*, 265 Ill. 331.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the

injury and itself becomes the direct and immediate cause of the injury. (*Illinois Central Railroad Co. v. Oswald,* 338 Ill. 270; *Pullman Palace Car Co. v. Laack,* 143 Ill. 242.) The intervention of independent concurrent or intervening forces will not break causal connection if the intervention of such forces was itself probable or foreseeable. (*Wintersteen v. National Cooperage and Woodenware Co.,* 361 Ill. 95; *Sycamore Preserve Works v. Chicago and Northwestern Railroad Co.,* 366 Ill. 11.) What is the proximate cause of an injury is ordinarily a question of fact to be determined by a jury from a consideration of all the evidence. *Phillabaum v. Lake Erie and Western Railroad,* 315 Ill. 131.

"The rule that the causal connection between a person's negligence and an injury is broken by the intervention of a new, independent, efficient and intervening cause so that the negligence is not actionable is subject to the qualification that if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer, his negligence may be considered the proximate cause of the injury and he may be held liable notwithstanding the intervening cause. The intervening act of a third person does not necessarily relieve the author of an earlier negligent or wrongful act from responsibility when the intervening cause of an injury is of such nature as could reasonably have been anticipated, in which case the earlier negligent act, if it contributed to the injuries, may be regarded as the proximate cause. *Garibaldi & Cuneo v. O'Connor,* 210 Ill. 284; *Armour v. Golkowska,* 202 Ill. 144."

Other leading cases on the question of proximate cause are the following: *Walsh v. Chicago Rys. Co.,* 294 Ill. 586 (defendant held liable for overcrowding its car, although a third person pushed the plaintiff); *Siegel, Cooper & Co. v. Trcka,* 218 Ill. 559, 564

(defendant held liable in this case for a faulty elevator even though plaintiff engaged in a scuffle with a third person); *City of Rock Falls v. Wells,* 169 Ill. 224 (the municipality was held liable for the negligent condition of one of its streets, although the intervening cause of the injury suffered was a runaway horse).

We believe that the evidence in this record shows beyond question that the defendant permitted to exist a condition so dangerous at the intersection in question that it was reasonably foreseeable that collisions would occur. As we view it, it was only a question of time under the conditions which the municipality permitted to exist at this intersection, until a serious accident happened.

The judgment of the circuit court of Rock Island county is correct and that judgment is affirmed.

*Judgment affirmed.*