## CITY OF FORT WORTH v. L. W. CRAWFORD.

### No. 6146.

1. **City Liable for Nuisance.**—An incorporated city exercising control and having possession of a dump yard, by the negligent mode of keeping it caused injury to the residents upon adjoining lands; *held*, that one so injured is entitled to recover damages.

2. **Same—Fact Case.**—See facts upon which a verdict was sustained for damages against the city (the appellant) for $750 for injury caused by the negligent and offensive mode in which were kept certain premises under control of the city and used to deposit offal, dead animals, etc.

3. **Municipal Liability for Nuisance.**—When a city has ample power to remove a nuisance that is injurious to the safety or impairs the convenience of its citizens, or when in the prosecution of a public work it creates a nuisance (or permits it to remain), it is liable for all the injuries that result from a failure on its part to properly exercise the power possessed by it and for the injuries resulting from its unlawful acts.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham.

This suit was brought by Crawford against the city of Fort Worth to recover of it damages for the reason that it established and maintained near to his home, consisting of seventeen and one-half acres of land whereon he resided with his family, a place of deposit or burying ground for the excrement of the city, dead animals, and all other noxious and offensive matters incident to a city; it being claimed that the work of the city in disposing of such substances on said ground was so negligently and carelessly done that the atmosphere was poisoned with offensive odors so as to render his home uninhabitable; that his family was made sick thereby, resulting in loss of time and doctor's and medicine bills, and that his property was greatly depreciated in value.

Plaintiff recovered a judgment for $750.

This is a second appeal. 64 Texas, 202.

*Capps & Cantey*, for appellant.

*A. M. Carter*, for appellee.—Authority to pass health ordinance. Rev. Stats., art. 404.

Authority to compel the removal of dead animals to designated place. Rev. Stats., art. 416.

On the liability of the city for negligence and nuisance. City of Fort Worth v. Crawford, 64 Texas, 202; Wilson v. New Bedford, 11 Am. Rep., 352; Dill. on Mun. Corp., secs. 1048, 1049, 1050.

Negligence. City of Galveston v. Posnainsky, 62 Texas, 118.

Liability of city for damaging plaintiff's property. Hamilton Co. v. Garrett, 62 Texas, 602; Bounds v. Kirven, 63 Texas, 159; G. C. & S. F. Ry. v. Fuller, 63 Texas, 467; Const., art. 1, sec. 17.

Liability for acts of Pardue, the scavenger. Dill. on Mun. Corp., 947.

HOBBY, JUDGE.—Upon the former appeal in this cause the judgment was reversed on the ground that the court failed in its charge to submit the proper test as to the appellant's liability, which was held to depend upon its negligence with respect to the deposit of and burial of the bodies of dead animals, garbage, filth, etc., upon the land adjacent to appellee's home, and which resulted in the injury complained of. City of Fort Worth v. Crawford, 64 Texas, 202.

The petition in this case was excepted to on the ground that it did not allege with sufficient certainty that the sickness and suffering and injuries to plaintiff and his family were occasioned from no other cause than the acts of defendant, and did not allege that the city had taken possession or assumed control of the ground on which the deposit of filth, garbage, and dead bodies of animals were made by proper ordinance or vote of its council, or that the city was acting in the scope of its authority if it had so taken possession. These exceptions were overruled, and this action of the court is assigned as error.

The petition alleged the due incorporation of the city of Fort Worth, the ownership and possession in 1881 and ever since by the plaintiff of seventeen and one-half acres of land near the city of Fort Worth to the east, which was the home of the plaintiff, his wife, and children, "of which latter he had several;" that it had been his home for a long time prior to said date (1881); that it was free from all noxious and offensive odors, and was a healthy abode for the plaintiff and his family; that in 1881 the defendant was in possession of ten acres of land in the city limits and close by the plaintiff's premises; that from some time in 1881 the defendant had continually "wrongfully, negligently, and unjustly cast, carried, and deposited, and caused and carelessly and negligently permitted to be cast, carried, and deposited on said ten acres of land in its possession great quantities of filth and refuse matter from privies, water closets, stables, sinks, and streets, and carcasses, and other noxious things too filthy to name or write in a petition." That the defendant failed and neglected to take reasonable and proper action to prevent said deposits from poisoning the air and so injuring the health of plaintiff and his family and ruining his said premises; that had the defendant taken reasonable and proper steps and acted in the premises in a reasonable and proper manner, "as it could and should have done," the injuries to plaintiff and his family would not have occurred. That on account of the sickness of the plaintiff's family, caused by said noxious odors, he was compelled to spend $100 for medicines and paid doctors $100; that on account of said sickness he and his wife lost a great amount of time, valued at $200; that the value of the nursing of his family during said sickness was $100.

It was not necessary for the petition by direct averment to negative the supposition that the sickness and injury to himself and family were occasioned by other causes than those constituting the foundation of the

suit. This was necessarily implied from the allegation that his home for a long time prior to 1881 had been free from all noxious and offensive odors, and was a healthy abode; that the acts of the defendant were the direct cause of the injury is sufficiently stated in the averments to the effect that his "was a desirous and healthy home for plaintiff and his family prior to the time the defendant *committed and permitted the nuisances* hereinafter complained of," etc., coupled with and followed by the allegations quoted, describing the nuisances.

It is also distinctly averred that "in 1881 the defendant was in possession of ten acres of land in the city limits and close by plaintiff's premises." If the fact of the nuisance created and maintained by it was established by proof while in its possession and control its liability would attach, and whether the city took possession by an ordinance or by vote of the council would be a matter of evidence, and it would not in such a case be essential to plead the character or nature of its possession.

The refusal of the court to give the following instruction is complained of:

"You are instructed that you are to find for the defendant unless you find from the evidence that the injuries arising from inhaling the noxious gases and effluvia complained of by plaintiff were the direct and immediate cause of the negligence of defendant's duly authorized agents, acting within the scope of their authority."

The court instructed the jury:

"That if you believe that the agents and employes of the city used the burying ground in a careless and negligent manner, and that they failed to use such care and precaution as would have prevented any special injury to the plaintiff not common to the public, and that the injury resulted therefrom to the plaintiff, to find for him."

This sufficiently advised the jury that there could only be a recovery for injuries to plaintiff not common to the public, which were the result of the negligence and carelessness of the defendant.

The requested instruction certainly was not correct, because if it had been given there could be no finding for the plaintiff "unless the jury found from the evidence that the injuries arising from the noxious odors," etc., complained of were the *direct and immediate cause of defendant's negligence.*

There is no evidence that these "injuries" of the plaintiff were "the direct cause of defendant's negligence;" but there is evidence "that defendant's negligence" was "the direct and immediate cause" of plaintiff's injuries.

It is further complained that there is no evidence that the city had possession and control of the land adjoining plaintiff, and that the court's charge having submitted this as a condition precedent to a recovery, the finding to that effect was contrary to the charge.

The evidence as to the control or possession of the land upon which the nuisance complained of was committed and permitted was the city ordinance 254, describing the burial grounds and place of deposit for filth, garbage, offal, dead animals, etc., and regulating the burial of the same, passed in May, 1880, and which designated for this purpose the lot or tract of land adjacent to plaintiff's, and the testimony of the witness Evans that he had frequently recognized it in passing the tract as that so designated, and the further evidence of Crawford that the defendant took possession of this land in 1881, and that the city passed an ordinance prohibiting under penalty persons from depositing all offensive matter there, and appointed a policeman for the purpose of watching and detecting parties so doing. This evidence, with the further fact that the city by ordinance directed the city scavenger to deposit filth, garbage, dead animals, etc., on' this ground, and regulating the manner in which this should be done, both by him and private parties, established unmistakably the exercise of control and possession upon the part of the city over this property, making it liable for any nuisance committed by it or which it could prevent.

The evidence also is, it is true, that other persons than the city scavenger made the deposits complained of, but it was clearly shown that the scavenger Pardue was grossly negligent and careless in the performance of this duty, and that he was remonstrated with by plaintiff, and that the city authorities were informed of the nuisance and its cause.

The effects upon plaintiff of the negligent manner in which these deposits were made were detailed at length. His home was rendered almost uninhabitable, his family and himself were kept in bad health, and he was, in the language of a witness, "a walking skeleton." This was caused by the noxious vapors arising from these deposits either left exposed on the ground or partially buried. The stench was so offensive that he had to shut his doors to eat and sleep. It was a continual nuisance, and rendered his property as a habitation worthless. For a year and a half he lost half of his time by reason of sickness. Paid one doctor $60, and bought and paid for medicines. Paid $15 a week to have his business attended to. After the ordinance was passed the burying amounted to nothing. Before it was passed it was not so offensive. The testimony shows that the filth on this place of deposit was indescribable, and was so offensive as to make persons passing sick, and could be perceived a mile away.

These facts were sufficient to support the verdict.

There is no doubt that a distinction exists between the liability of a municipal corporation for acts done exclusively for a public purpose and those done for its own private advantage. The distinction is that in the former case it is only liable for the negligent or careless execution of its duty. In the latter it is liable, as would be an individual, for all dam-

ages resulting from the act, irrespective of the question of negligence. Wood on Nuis., sec. 745.

There is also no doubt that every person has a right to have the air diffused over his premises free from noxious vapors and noisome smells that would not exist there except for the acts of the party complained of, and which are prejudicial to health or nauseous to the smell or trench upon the rights of the person affected thereby. Id., pp. 471–3. "In case of noisome smells arising from noxious vapors the stench must be of such character as to be offensive to the senses, or to produce actual physical discomfort, such as naturally interferes with the comfortable enjoyment of property. It is not necessary that it should be hurtful or unwholesome. It is sufficient if they are so offensive or produce such annoyance, inconvenience, or discomfort as to impair the comfortable enjoyment of property by persons of ordinary sensibilities." Wood on Nuis., sec. 495. And "when a municipal corporation has ample power to remove a nuisance that is injurious to health, endangers the safety, or impairs the convenience of its citizens, or when in the prosecution of a public work it creates a nuisance (or permits it to remain), it is liable for all the injuries that result from a failure on its part to properly exercise the power possessed by it and for the injuries resulting from its unlawful acts." Id., sec. 744.

We believe these to be the legal principles applicable to this case, and we are of opinion that the judgment should be affirmed.

*Affirmed.*

Adopted June 18, 1889.