[No. 1822.]
MCAULIFFE v. THE CITY OF VICTOR.

15    337,
37S   373
37S   376
h37S  378

1. CITIES AND TOWNS—NEGLIGENCE—DAMAGES.
Incorporated cities and towns are not liable for injuries caused by the
    negligent acts of their public officers in the execution of the judicial
    or governmental authority of such municipal corporations.
2. SAME.
A city is not liable for injuries to a person who had been arrested by a
    police officer and confined in the city jail for a violation of the city
    ordinances and who was injured by the burning of the jail, although
    the injury was caused by the negligence of the city officials in the
    exercise of their official duties.

*Error to the District Court of El Paso County.*

Mr. SCOTT ASHTON, for plaintiff in error.

Mr. DANIEL A. FERGUSON and Mr. ALBERT S. FROST,
for defendant in error.

BISSELL, P. J.

This is measurably, if not wholly, a case of first impression
in this jurisdiction. I am quite clear that professional opin-
ion generally would at first blush concur with my original im-
pressions of municipal responsibility in this class of cases.
The whole trend and almost the entirety of adjudication is
against it. The object of the action is to compel the city of
Victor to respond in damages for injuries received by the
plaintiff through the alleged negligent acts of the city au-
thorities. The case comes upon error to a judgment ren-
dered on demurrer and the cause of action is deducible only
from the pleading. Wherefrom it appears McAuliffe had
been arrested by a police officer for a violation of an ordi-
nance of the town and locked up in the calaboose. Later
another violator of an ordinance was arrested and put into a

cell quite a distance from the apartment in which McAuliffe had been confined.   As near as we can gather from the pleading several persons were confined where McAuliffe was, though the drunken man was put into an independent cell. The intoxicated person, in some way undisclosed, set fire to his bedding which communicated with the building and the fire spread to the apartment where the plaintiff had been put. It is charged that there was no water by which they could put the fire out and that nobody was around to look after the calaboose and McAuliffe was, as he alleges, severely burned and very much injured by the smoke which he inhaled, and the result of all these things was a very substantial injury to his person and to his health.   For this he brings suit.

Negligence, of course, is the gist of this, as of all other actions in tort against cities.   We must presume for the purposes of the decision that the plaintiff sustained the injuries of which he complains, because if the city can ever be held in cases of this sort, the plaintiff stated enough to enable him to maintain his suit. ˙ If the action was against the county or against the state, an unbroken current of authority would deny his right to recover.   Counsel, as have the courts in one or two cases, attempt to draw a distinction between suits against cities and actions against a state or a county as a part of the sovereignty which are not held to be liable because of the negligence of the agents, and this on the general hypothesis that municipalities are not parts of the govermental organization, but are organized and exist solely and wholly for the benefit of the inhabitants within its boundaries, and the powers conferred are granted for their benefit, and when they attempt to exercise these powers they are held to a somewhat strict accountability for the due performance of the extraordinary authority which statutes generally gives cities. Courts have gone a long way in holding cities liable for the negligent acts of their agents, and they are always holden wherever the acts which are being done, or attempted to be done, or permitted to be done, are acts for the benefit, as perhaps it may be permissible to say, of the individuals who are

inhabitants of the municipality.  It is on this general prin-
ciple that a city is held liable for the care of its streets and
sidewalks, for negligence or carelessness in the construction
of its sewers and drains, and probably as to sewers wherever
there is a defect in the original plan of which they ought to
be advised, though they are not liable for defective judgment
or for insufficiency in size.  This general statement shows
in the main the course and general results of adjudication on
this subject.  Whenever we approach the other field which
only concerns the exercise by the municipality of the judicial
or governmental authority which may have been the subject
of power granted, we find the cases almost universally hold
cities are not liable for injuries resulting from negligent acts.
The cases proceed on the hypothesis that acts of this nature
are for the benefit of the public as well as of particular citi-
zens and that they are done in a public capacity, and since a
city is really one of the political subdivisions of the state the
city is not responsible for the negligent performance of such
public duties.  We are cited to quite a number of cases of a
character precisely similar to this in which the city has been
acquitted of liability and to others of an analogous character
which support these decisions.  *La Clef v. City of Concordia*,
41 Ky. 323 ; *Hill v. City of Boston*, 122 Mass. 344 ; *Brown's
Admr. v. Guyandotte*, 34 W. Va. 299 ; *Davis v. Knoxville*,
90 Tenn. 599 ; *Pollock's Admr. v. Louisville*, 13 Ky. 221 ;
*Mendel & Co. v. Wheeling*, 28 W. Va. 233 ; *City of Richmond
v. Long's Admr.*, 17 Gratt. 375 ; *Corning v. City of Saginaw*,
116 Mich. 74 ; *White v. Board of County Commissioners*, 129
Ind. 396.

We are only cited to the decisions of one state, North Car-
olina, wherein a different doctrine has been announced.  The
principal case in the state is *Moffat v. Asheville*, 103 N. Car.
237.  We cannot regard it, however, as one which at all as-
sails the doctrine of the cases which we have cited, or which
lays down a different rule regarded as one of general law.
Therein the city was held liable for a failure to properly main-
tain a jail and for injuries which the plaintiff had sustained

because of neglect. The liability of the city is put on the precise ground that the constitution and the statutes laid a specific duty on the municipality and a breach of it would, because of the character, nature and terms of the legislation, make the city liable. The court broadly declared the city would have incurred no liability in any view of the case but for the express provisions of the constitution and the law. By the constitution the lawmakers are required to provide for the structure and superintendence of the penal institutions of the state, including city police prisons, to secure the health and comfort of the prisoners, etc. The statute provided that the keeper of the jail should observe certain requirements in the management of the prison, and provide attendants for the safety of the prisoners. Even under a constitutional provision and legislation of this specific character the court went so far as to intimate that if the city authorities built a reasonably suitable prison and furnished attendants to look after the health and comfort of prisoners, they would not be liable for the neglect of the jail or the negligence of the attendants. It is quite true this was but an intimation of the court and the question was left open as unnecessary to the decision. The whole course and reasoning of the opinion is in support of the general rule that cities are not liable for the performance of these governmental duties or for the negligence of the agents who may be selected for the purpose when the statute which grants the power does not enjoin its exercise in a particular manner. It is argued in the present case that under the general statute cities are given authority to establish places of confinement like calabooses, and are authorized to make rules and regulations for their government and to appoint keepers. This is undoubtedly a granting of specific power to establish such places and gives the city government full authority to provide for the maintenance and care and government of places of confinement as well as the right to appoint keepers and assistants. It is however a grant of authority without a specific limitation in the grant that it shall only be exercised in case these things are done; in other words, it seems to be

a general grant of power to establish the place and do whatever may be regarded by the government as requisite for proper maintenance, support and regulation.   We are unable to see that legislation of this sort at all resembles that in North Carolina and compels the application of the rule which that state has established.   That court in direct terms held: " Where a city or a town is exercising the judicial, discretionary, or legislative authority, conferred by its charter, or is discharging the duty, imposed solely for the benefit of the public, it incurs no liability upon the negligence of its officers, though acting under color of office, unless some statute (expressly or by necessary implication) subjects the corporation to pecuniary responsibility for such negligence."   It will be observed from the tenor and terms of this quotation the court recognizes the general rule which we have announced and only holds the case under consideration as without its operation because of the peculiar legislation in that state.

It may be a little difficult, and I confess I had some trouble to recognize the force of the exception established by the cases.   If the question was an open one, I might be inclined to hold the city responsible.   The whole current and in fact the almost unanimous decision of the courts on the question forecloses our judgment and compels us to exonerate the municipality and affirm the judgment entered on the demurrer.

*Affirmed.*