Minnie F. Cleveland, as Administratrix, etc., of C. Lewis Cleveland, Deceased, Appellant, *v.* Town of Lancaster and Another, Respondents, Impleaded with Harvey Hill, Defendant.

Fourth Department, November 10, 1933.

*James O. Moore*, for the appellant.

*Levant D. Lester*, for the respondent Town of Lancaster.

*Carlton A. Fisher*, for the respondent Town of Cheektowaga.

TAYLOR, J. Separate judgments have been entered in favor of the towns of Lancaster and Cheektowaga dismissing plaintiff's complaint on the merits. An order has also been entered denying plaintiff's motion for a new trial. The appeals herein are from these judgments and order.

The complaint alleges that on the 23d day of August, 1930, there existed at the intersection of Genesee street and Transit road an automatic electric traffic signal suspended about twenty feet above the surface of the road, which had been erected and maintained at the joint expense of the two towns; that it was the duty of the said towns to keep the signal in proper working condition and not allow it to remain out of repair; that on said day and for about ten days immediately preceding the signal was out of repair to the knowledge of the proper officers of said towns; that on said day plaintiff's intestate was a passenger in an automobile operated by the defendant Hill, which was traveling westerly in Genesee street; that at said intersection Hill's car came into collision with an automobile owned by Frank J. Bryant and being driven by him in a southerly direction on Transit road; that the collision resulted in the death of plaintiff's intestate September 27, 1930; that when the collision occurred the signal displayed a green light on the north side, but did not display a red light on the east side — so that defendant Hill was not warned of the approach of the Bryant car and drove into the trap thus created and against the Bryant car; that the accident occurred through the negligence of the defendant Hill in not looking to the right before entering the intersection, and of the towns in failing and neglecting to keep the signal in proper repair.

The defendant towns answered denying negligence on their part or on the part of their officers and agents. Motions to dismiss the complaint were made by the towns at the opening of the trial, at the close of the plaintiff's evidence, and at the conclusion of the defendants' evidence. The court granted the motions as to the towns, but submitted the question of Hill's negligence to the jury. As to him a disagreement was reported.

The two town boards had statutory authorization to appropriate money for traffic control and for the purchase, lease, installation and maintenance of traffic standards. (Town Law of 1909, § 138-d.) Acting under this grant the town board of Cheektowaga duly adopted a resolution authorizing and directing its supervisor to enter into a contract with the town of Lancaster for the installation and maintenance of the signal in question. Such contract was duly entered into. It recites among other things that the convenience and safety of the public require the regulation of traffic at the intersection. The town of Cheektowaga paid the contractor for the installation, and billed the town of Lancaster for half of it. Thereafter the town of Cheektowaga maintained the signal and charged one-half of the expense to the other town. In this work of installation and maintenance the town of Cheektowaga acted through its supervisor, not its town superintendent of highways. The supervisor was also the head of the police department. After the installation the Cheektowaga town board placed the signal under the jurisdiction of its police department, which was instructed to see that all traffic lights were burning and in case a light got out of order to call upon the contractor to repair it.

The town boards were also authorized by statute to enact ordinances, rules and regulations relating to peace and good order generally. (Town Law of 1909, § 141-c, subd. 1.) The erection of the traffic signal was an appropriate exercise of this power, for it is conceded that prior to such installation, traffic conditions at the intersection in question were in a state of disorder. It was in effect an exercise of the police power, the substituting of a signal for a policeman. One can readily appreciate the difficulties which would beset all vehicle drivers at this busy intersection with the traffic uncontrolled. The town boards, therefore, in appropriating money for the signal, and in erecting and maintaining it, were acting under both section 138-d and section 141-c, subdivision 1, *supra*. The subject of signals and traffic lights is treated in article 6 of the Vehicle and Traffic Law and section 91 makes it the duty of members of the police department of every city, town and village to enforce its provisions.

Appellant's first contention is that it was the duty of the town superintendents to install and maintain the traffic signal and that their negligence in that regard became the negligence of the towns under section 74 of the Highway Law. That section reads in part as follows: " Liability of town for defective highways. Every town shall be liable for all damages to persons or property sustained by reason of any defect in its highways or bridges, existing because of the neglect of any town superintendent of such town."

It is conceded that both Genesee street and Transit road are State and county (not town) highways. It is provided in section 170 of the Highway Law that the maintenance and repair of improved State and county highways in towns shall be under the direct supervision and control of the Superintendent of Public Works and he shall be responsible therefor. The general powers and duties of town superintendents of highways are prescribed in section 47 of the Highway Law and relate to the care, supervision, maintenance and repair of the highways and bridges in the towns. Nowhere in that section or elsewhere do we find that the Legislature has imposed upon town superintendents any duties or responsibilities with respect to the installation or maintenance of traffic signals on any highways. And they have no power to represent or affect the town otherwise than in the manner provided by statute. (*Flynn* v. *Hurd*, 118 N. Y. 27, 28; *Brothers* v. *Town of Leon*, 198 App. Div. 144, 148.) None of their powers or obligations are governed by the common law. And the highways and bridges " in the town " referred to in section 47 of the Highway Law are the highways and bridges *which the town is required to maintain*, and not the highways which are under the exclusive supervision and control of the State Commission. It was so held in *Ferguson* v. *Town of Lewisboro* (213 N. Y. 141, 145): " That section [section 47] must be read in connection with the article specifically relating to the maintenance of State and county highways. Thus read it will appear that the highways and bridges in the town referred to in section 47 are the highways and bridges which the town is required to maintain and not the highways which are under the exclusive supervision and control of the State Commission. * * * Section 53 is the only section of article 4 which imposes a specific duty on town boards in relation to State and county highways."

That decision was followed by this court in *Graham* v. *Town of Urbana* (235 App. Div. 275), Mr. Justice CROSBY saying for the court (at p. 276): " It [section 74] clearly refers to town highways, when, in speaking of the town's liability, it uses the words ' its highways.' "

These not being town highways, it would seem to follow that

any negligence of a town superintendent in installing or maintaining the traffic signal could not be held to be the negligence of the towns under section 74 of the Highway Law.

Appellant's second point is that if the towns are not liable under the Highway Law, section 74, they are liable for the negligence of their town boards under Town Law of 1909, article 24, section 472. That section reads in part as follows: " The said board shall have power * * * to locate, lay out, open, construct, alter, regulate, grade, regrade, pave, repave, curb, repair and macadamize or otherwise improve new highways, as well as the highways at present within such town; to lay sidewalks and crosswalks, and put up street signs."

This section must be read in connection with section 460, creating a town board for the town of Cheektowaga, and section 462, which provided that " said board shall possess and exercise all the powers and be subject to all the duties now or hereafter imposed by the general laws of this State upon a town superintendent of highways." These sections gave the board the same powers and duties over highways as were formerly possessed by the town superintendent of highways. There is nothing to indicate that they also gave the towns in question any power over the State and county highways in the town. Here attention should be called to section 170 of the Highway Law, which reads in part as follows: " Maintenance and repair of improved State and county highways in towns and incorporated villages * * * shall be under the direct supervision and control of the Superintendent of Public Works and he shall be responsible therefor."

If it be true as heretofore pointed out that the town superintendents of highways had no jurisdiction over this signal, then the town boards acting as town superintendents of highways were likewise devoid of jurisdiction, for section 462 of the Town Law conferred no powers upon the town boards which had not theretofore been reposed in the town superintendents of highways. The appellant relies upon *McGuinness* v. *Town of Westchester* (66 Hun, 356) and *Buffalo Fertilizer Company* v. *Town of Cheektowaga* (61 Misc. 404). These cases are not authoritative inasmuch as the highways involved were town highways, not State and county highways, as here. The distinction was alluded to *supra* in *Ferguson* v. *Town of Lewisboro* (213 N. Y. 141) and *Graham* v. *Town of Urbana* (235 App. Div. 275). But the appellant argues: " If the towns undertake the care and repair of the highways or any parts thereof, they become liable for a proper discharge of the ministerial acts, based upon an express or implied acceptance of the power and duty."

This liability (if it exists) is predicated not upon any statute but upon an asserted general principle of law.

The appellant seems to withdraw the concession made in her principal brief that the towns were not bounden, in the absence of statute, for any damages sustained by reason of the negligence of the authority charged with the maintenance of the mechanism. The concession is withdrawn if this court shall decide that the *towns*, not the *town superintendents* of *highways*, were empowered to and did maintain the signal. In view of what has been said *supra*, we cannot decide otherwise than that this power was vested in the towns. Upon such withdrawal the appellant proceeds to argue that the towns may be liable even in the absence of a statutory declaration on the subject. The argument in a nutshell appears to be that the town boards having taken over the care of the streets to the extent of installing this signal light, the towns, by reason of their accepting the power conferred upon them by the statute (Town Law, § 138-d), are liable for not maintaining this light and, therefore, the streets with care. From a reading of the reply brief and the repeated citation therein of *Missano* v. *Mayor* (160 N. Y. 123) it would seem that a second concession is also probably withdrawn. It is as follows: " In the instant case there was the exercise of a pure governmental function, as distinguished from the performance of a quasi-private duty for the advantage of the municipality and its inhabitants."

At common law counties and towns were merely divisions of the State organized for the convenient exercise of portions of the political power of the State. (*Lorillard* v. *Town of Monroe*, 11 N. Y. 393.) As such they were exempt from liability for the negligent exercise of such power. (*Augustine* v. *Town of Brant*, 249 N. Y. at p. 205.) Where a principle of the common law has entered into our form of government, it is controlling, until by legislation, express in its terms, it is modified or negatived by the substitution of a new declaration upon the subject. (*Markey* v. *County of Queens*, 154 N. Y. at p. 682.) The rule is firmly established that the common law has been no further abrogated by a statute than is to be understood from the unmistakable import of the language used. (Id. p. 687, citing *Bertles* v. *Nunan*, 92 N. Y. 152.)

The towns were originally organized to exercise portions of the political power of the State, but with their growth in importance and population, the Legislature has from time to time imposed upon them the duty, or conferred upon them the power to exercise non-political, or as they have been termed, quasi-private or proprietary functions. The distinction which formerly existed between counties and towns on the one hand and incorpo-

rated cities and villages on the other, with respect to liability for the acts of the persons exercising the powers conferred, has been largely wiped out. The earlier rule was that the counties and towns were not liable in the absence of a statutory declaration, while cities and villages might be, their responsibility depending upon the nature of the power exercised. (*Markey Case, supra,* 684.) If the power exercised was proprietary in character, the city was liable; if governmental, it was not.

It is submitted that the same rule now applies — almost, if not quite — to the towns (notwithstanding *Bertles* v. *Nunan, supra*). The tendency is against non-liability with respect to all classes of municipal corporations. (*Augustine* v. *Town of Brant,* 249 N. Y. at p. 205; *Matter of Evans* v. *Berry,* 262 id. 61, 70, 71.) If it be assumed that the rule applies, the test now seems to be whether there has been imposed or conferred upon a town a public or governmental duty, as opposed to a mere quasi-private or proprietary duty. If the former, the town acts as agent of the State for the benefit of the people of the State at large and the rule of non-liability for negligence is applied. If the latter, the town is liable to the same extent as any individual or private corporation would be liable. (*Augustine Case,* 249 N. Y. *supra,* 203, 204.)

It remains only to apply the above principles to this case. Section 138-d of the Town Law is a statute authorizing towns *to appropriate money* for securing, installing and maintaining traffic standards. It simply empowers towns to buy, set up and pay for the upkeep of such standards. If it be assumed that it goes further in obligating the towns, it seems clear that in establishing and maintaining the traffic signal the towns were acting as agents for the State, for the towns themselves had no control over the highways in question (as the city had in *Missano* v. *Mayor,* 160 N. Y. 123). The State alone had supervision and control of this highway intersection under section 170 of the Highway Law. Moreover, while perhaps it cannot be said that the establishment of the signal was a public duty "imposed" upon the town, nevertheless any duty which came into existence the moment the town availed itself of the permission granted by section 138-d of the Town Law was a duty to the public of the State generally, not just to the people of the locality. Nor can it be fairly said that the towns here were acting as an individual would act, "voluntarily assuming a duty, not imposed upon it, for the benefit of a locality rather than the general public." (*Augustine Case, supra,* 206.) The towns were not performing "mere quasi-private duties for the peculiar advantage of the municipality." (Id. p. 203.) The signal was established

and maintained pursuant to " a lawful power which was vested in [the towns] by the legislative body for the *public convenience* and welfare *and not for any private benefit of the corporate body*." (*Markey* v. *County of Queens*, 154 N. Y. at p. 687, quoted by POUND, J., in *Augustine* v. *Town of Brant, supra*, 205.) It follows, therefore, that if the towns in installing and maintaining the signal under section 138-d of the Town Law were obligated further than hereinbefore indicated, they were exercising governmental functions as agents of the State and hence are not liable. (*Wilcox* v. *City of Rochester*, 190 N. Y. 137.) The principle stated in *Herman* v. *Board of Education* (234 N. Y. 196) cannot apply for the same reason. Whether the maintenance of the standard was a highway or a police function, it seems clear that it was governmental in its nature. And inasmuch as the State had not imposed upon the towns the duty, or conferred upon them the right, to take over the care and maintenance of *these highways*, and, collaterally, this signal light, it cannot be said that there was any grant, acceptance or exercise of *such* power by the towns. The acts of the Cheektowaga police were done in the attempted performance of a duty laid by law upon them and not upon the municipality. (*Maxmilian* v. *Mayor*, 62 N. Y. 160, 164; Vehicle & Traffic Law, § 91.) They acted, not as agents of the municipalities but of the State (*Wilcox* v. *City of Rochester*, 190 N. Y. 137); and for any negligence on their part while thus acting the towns are not liable.

As we read the opinion in *Matter of Evans* v. *Berry* (262 N. Y. 61) we find nothing in it, even by way of dictum, requiring us to draw the inference that we should reverse these judgments because — having erected the signal light pursuant to Town Law, section 138-d — the towns may be held liable for negligent maintenance even though the roads were not town highways and even though any obligation of the towns to keep the signal in repair would — as a matter of definition — refer to a governmental function.

The judgments and order should be affirmed.

All concur. Present — SEARS, P. J., TAYLOR, THOMPSON and CROSBY, JJ.

Judgments and order affirmed, with costs.