## PARSON et al. v. TEXAS CITY.
### No. 15427.

Court of Civil Appeals of Texas. Fort Worth.
May 15, 1953.

Rehearing Denied June 19, 1953.

Beckhusen & Lerner, LaMarque, for appellants.

Armstrong, Bedford & Lambdin, Galveston, for appellee.

BOYD, Justice.

This is a consolidation of two suits, one by Ellis L. Parson and the other by J. E. Turner against the City of Texas City, for damages growing out of a collision of an automobile occupied by the wives of the plaintiffs with another automobile driven by one Raines, at a crossing of two streets in the city of Texas City, in which collision both ladies were injured, it being alleged that the collision resulted from the "simultaneous display * * * of green or go-ahead lights to traffic moving in intersecting * * * directions at the intersection," by a lighting signal suspended approximately thirty-five feet above the intersection, and that this condition of the lights had existed for several days, and created such an essentially dangerous traffic hazard as to constitute a nuisance. It was admitted that (1) the maintenance of a traffic control signal device at the intersection involved was not an unreasonable means of direct-

ing and controlling traffic at that intersection; (2) there was no appreciable risk of harm or damage to persons or property resulting from the installation of the traffic control signal device so long as it was properly maintained; and (3) neither automobile involved in the collision came into physical contact with the traffic signal, and neither changed its course either prior to or at the time of the collision in order to avoid physical contact with the traffic signal.

The City filed a motion for summary judgment on the ground that the pleadings of the plaintiffs failed to state a cause of action, in that the erection and maintenance of traffic signal lights involved a governmental function and that the negligent operation of such traffic signal lights cannot be the basis of recovery against the City. The motion for summary judgment was sustained and the plaintiffs appealed.

The appellants urge for reversal a single point to the effect that it was error to sustain the motion for summary judgment because the continued maintenance of the defective traffic light created an essentially dangerous hazard and was a nuisance, and that the City is liable for maintaining a nuisance even though it be in connection with the exercise of governmental power.

■ It is well settled that a city, in the exercise of a governmental as distinguished from a proprietary or corporate function, is exempt from liability for damages occasioned by its negligence in carrying out such function. City of Galveston v. Posnainsky, 62 Tex. 118; City of Port Arthur v. Wallace, 141 Tex. 201, 171 S.W.2d 480; City of Amarillo v. Ware, 120 Tex. 456, 40 S.W.2d 57; Barnes v. City of Waco, Tex. Civ.App., 262 S.W. 1081, writ refused; Whitfield v. City of Paris, 84 Tex. 431, 19 S.W. 566, 15 L.R.A. 783; City of Houston v. Shilling, Tex.Sup., 240 S.W.2d 1010, 26 A.L.R.2d 935. Although there has been strong dissent from the holding that the maintenance and operation of an electric traffic control signal is a governmental function as being an incident to policing activities, Johnston v. City of East Moline, 405 Ill. 460, 91 N.E.2d 401, we think such holding is sustained by the great weight of authority. Baker v. City of Waco, Tex.Civ.

App., 129 S.W.2d 499; Auslander v. City of St. Louis, 332 Mo. 145, 56 S.W.2d 778; Powell v. City of Nashville, 167 Tenn. 334, 69 S.W.2d 894, 92 A.L.R. 1493; Vickers v. City of Camden, 122 N.J.L. 14, 3 A.2d 613; Parsons v. City of New York, 273 N.Y. 547, 7 N.E.2d 685; Sandmann v. Sheehan, 279 Ky. 614, 131 S.W.2d 484; Dorminey v. City of Montgomery, 232 Ala. 47, 166 So. 689; Cleveland v. Town of Lancaster, 239 App.Div. 263, 267 N.Y.S. 673; Martin v. City of Canton, 41 Ohio App. 420, 180 N.E. 78; Kirk v. City of Muskogee, 183 Okl. 536, 83 P.2d 594; Tolliver v. City of Newark, 145 Ohio St. 517, 62 N.E.2d 357, 161 A.L.R., p. 1404; Avey v. City of West Palm Beach, 152 Fla. 717, 12 So.2d 881; Hodges v. City of Charlotte, 214 N.C. 737, 200 S.E. 889. Appellants concede that such is the law. However, it has long been established that an exception to such immunity exists when a city creates or maintains a nuisance in connection with a governmental function. City of Fort Worth v. Crawford, 74 Tex. 404, 12 S.W. 52; Wiggins v. City of Fort Worth, Tex.Civ.App., 299 S.W. 468, affirmed, Tex.Com.App., 5 S.W.2d 761. Therefore, if the appellants have in fact alleged that the City created or maintained a nuisance, they have alleged a cause of action, and the summary judgment should not have been granted.

■ It appears that the case may be disposed of with the answer to this question: Is the continued maintenance of an automatic traffic control signal light which does not itself encroach upon a public street, but which is out of repair so as simultaneously to display green lights to traffic moving in intersecting directions, causing injury to a motorist, a "nuisance" within the principle making a municipality liable for the maintenance of a nuisance while the City is engaged in a governmental function? We believe that under the authorities the question must be answered "no."

"Nuisance" covers many varied situations and is difficult to define. Kincaid v. Chicago, R. I. & G. Ry. Co., Tex.Civ.App., 119 S.W.2d 1084; McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 57 A.L.R. 1.

It has been held that for a city to be liable for creating or maintaining a nuisance, the nuisance must constitute an unlawful invasion of the rights of the complaining party. In Gotcher v. City of Farmersville, 137 Tex. 12, 151 S.W.2d 565, 566, it was shown that the City maintained a sewage disposal cesspool on land where young children customarily played. The top of the cesspool resembled a sand pile and there was no guard rail around the pit. The plaintiff's seven year old child stepped onto the surface of the cesspool, sank into the pit and was drowned. It was alleged that the cesspool, with its misleading appearance and unguarded as it was, constituted a nuisance for which the City ought to be held liable, even though it was engaged in a governmental function in maintaining the cesspool. The City's demurrer to the petition was sustained and Chief Justice Alexander, writing for the Supreme Court, in affirming the trial court's judgment, said: "Plaintiffs' second contention is that the cesspool constituted a nuisance, and that by reason thereof the City is liable for damages caused by the maintenance thereof. There are authorities which hold that a municipality is liable for damages caused by the maintenance of a nuisance, even though the municipality in maintaining the same is engaged in the exercise of a governmental function. 43 C.J. 956; 30 Tex.Jur. 537. However, in order to create liability for the maintenance of a nuisance, the nuisance must in some way constitute an unlawful invasion of the rights of others. 46 C.J. p. 653, sec. 18. For example, in the case of City of Fort Worth v. Crawford, 74 Tex. 404, 12 S.W. 52, 15 Am.St.Rep. 840, a municipality operated a dump yard in such manner as to cause noxious and offensive odors to invade the premises of an adjoining landowner and injure his health. No such facts are here alleged as are necessary to bring the cesspool in question within the class of the nuisance there referred to. * * *"

In Braun v. Trustees of Victoria Independent School Dist., Tex.Civ.App., 114 S.W.2d 947, 948, writ refused, it was alleged that the trustees of the School District had caused or allowed a ligustrum tree near the buttress of the front steps of the school building to be pruned so that the branches were sharp pointed, "resembling spears and daggers," which condition was known to the trustees. The plaintiff's minor daughter fell off of the buttress, where it was customary for children to stand, and was severely injured upon coming in contact with the sharp limbs of the tree, and the contention was that the tree, with its sharp branches in such close proximity to the buttress, created a hazardous and dangerous condition and constituted a nuisance erected or permitted by the trustees. A general demurrer was sustained to the petition, and in affirming, the Court of Civil Appeals said: "What is the difference in alleging that the agents of the school district were negligent in maintaining the ligustrum tree under all the circumstances and in alleging that under all the circumstances the ligustrum tree was a nuisance and that the agents of the school were negligent in maintaining and not abating the nuisance? The question of a nuisance becomes relevant when, by the maintenance of a nuisance, private property or property rights have been involved. * * * In addition to what we have above decided, we are of the opinion that the ligustrum tree under all the circumstances was not of such inherent danger as to be regarded in law as a nuisance, and this case presents nothing more than a negligence case. Calling the freshly pruned ligustrum tree a nuisance does not make this a different suit than if appellant had simply alleged negligence in the maintenance of the ligustrum tree."

In Brown v. City of Craig, 350 Mo. 836, 168 S.W.2d 1080, 1082, the plaintiff's husband lost his life in a fire that destroyed the city jail, in which he was confined on a charge of drunkenness. It was alleged that the jail was located a long distance from other houses where people lived; there were no means of communication with persons outside; there were no fire extinguishers, no fire protection, and no watchman; the building was of sound-proof and air-tight construction with no openings for ventilation; was so constructed that an inmate could not reach an outer door; trash, papers, grease, oil, cigarette stubs, and other combustible material had accumulated

in the jail for a long period of time "to the knowledge of said City of Craig and the officers and mayor thereof," and that such construction and negligent maintenance of the jail in such condition for a long period of time constituted a nuisance. In affirming a judgment sustaining a general demurrer, the court held that the real basis of plaintiff's claim was negligence and not nuisance, and the city therefore was not liable, citing 41 Am.Jur., p. 899; 43 C.J., p. 1168, 63 C.J.S., Municipal Corporations, § 903; 46 A.L.R., p. 103; Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485; Brown's Adm'r v. Town of Guyandotte, 34 W.Va. 299, 12 S.E. 707, 11 L.R.A. 121. See also McAuliffe v. City of Victor, 15 Colo.App. 337, 62 P. 231; Nichols v. Town of Fountain, 165 N.C. 166, 80 S.E. 1059, 52 L.R.A., N.S. 942; Lahner v. Incorporated Town of Williams, 112 Iowa 428, 84 N.W. 507.

In Baker v. City of Waco, supra, it was held that damages occasioned by the failure of the employees of the City to flash a yellow light and to ring a warning bell to warn persons using the street that an emergency vehicle was about to pass the intersection were not recoverable, even though the City customarily gave such warning, and that the allegation that such situation constituted a nuisance was a conclusion not sustained by the fact allegations of the petition. A demurrer was sustained to plaintiff's petition and the Court of Civil Appeals affirmed the judgment.

■ When a city, in the exercise of its governmental function of controlling traffic, uses means that constitute a dangerous physical obstruction of the street, it commits an affirmative wrong for which recovery will be allowed. Baker v. City of Waco, supra; Murphy v. Incorporated Village of Farmingdale, 252 App.Div. 327, 299 N.Y.S. 586; Mayor and Aldermen of City of Vicksburg v. Harralson, 136 Miss. 872, 101 So. 713, 39 A.L.R. 777; Town of Hobart v. Casbon, 81 Ind.App. 24, 142 N.E. 138. But in many jurisdictions it has been held that a municipality owes no legal duty to the public to erect, maintain, or repair traffic signal lights. Vickers v. City of Camden, supra; Parsons v. City of New York, supra; Sandmann v. Sheehan, supra;

Dorminey v. City of Montgomery, supra; Cleveland v. Town of Lancaster, supra; Martin v. City of Canton, supra; Kirk v. City of Muskogee, 183 Okl. 536, 83 P.2d 594.

If a city owes no legal duty to the public to repair and maintain in good working order a traffic signal light it has installed, it would seem that its failure to do so would not constitute an unlawful invasion of the rights of a complaining party, under the rule laid down in Gotcher v. City of Farmersville, supra.

We believe that the weight of authority in this state and other jurisdictions is to the effect that to constitute a nuisance the danger must be inherent in the thing itself, beyond that arising from negligence in its use, and are constrained to hold that the maintenance of the signal light in the condition described in appellants' pleadings did not constitute a nuisance making the City liable, and that the court did not err in sustaining appellee's motion for summary judgment.

■ We are not unmindful of the rule that the doctrine of nonliability is strictly construed against the municipality. City of Houston v. Shilling, supra. Nor do we extend this opinion to explore the possibility that the doctrine should be reconsidered in the light of the suggestion, often repeated, that it is unsound in theory and wrong in practice. We are bound by the authorities. Moreover, if there be need for such reconsideration, we think it is a legislative, rather than a judicial, prerogative. City of Port Arthur v. Wallace, supra; Brown v. City of Craig, supra.

The judgment is affirmed.

MASSEY, C. J., dissents.

MASSEY, Chief Justice (dissenting).

I respectfully dissent from the majority opinion of the court, and believe that the judgment of the trial court should be reversed.

Acknowledging that the attorney for the appellant concedes in his brief that the maintenance of an electric traffic control signal is a governmental function, and by reason of his concession appears to base

his argument upon the theory of nuisance (though fundamentally the action he asserts is based upon negligence amounting to a nuisance), for which the appellant would be entitled to maintain the action even though the appellee City's act or omission was governmental in character, yet I believe that appellant's cause of action should be maintainable upon either negligence or nuisance.

A nuisance dependent upon negligence consists of anything lawfully but so negligently or carelessly done or permitted as to create a potential and unreasonable risk of harm, which in due course results in injury to another. A nuisance denotes that class of wrongs that arise from the unreasonable use by a person of his own property, or from his own improper conduct, working an obstruction or injury to a right of another, or of the public, and producing such a hurt that the law will presume a consequent damage. 66 C.J.S., Nuisances, § 1, page 727.

Where a municipality acts in its private or corporate capacity, and not in connection with duties imposed upon it under powers conferred to it as a legal agency of the state, or as the representative of its sovereignty, its acts are proprietary, or corporate, and it is liable for torts committed by its officers or agents in performing them. City of Fort Worth v. Wiggins, Tex.Com. App. 1928, 5 S.W.2d 761, affirming, Tex. Civ.App., 299 S.W. 468; 30 Tex.Jur., p. 101, sec. 47.

The laying out of, condemnation of land for, and construction of streets by municipalities in Texas is a governmental function, just as in cases of public parks, but the maintenance of the streets, as the parks, is a proprietary or corporate function of a municipality once construction ceases and public use ensues. Had the incident giving rise to the litigation in the case of Gotcher v. City of Farmersville (discussed in the majority opinion) occurred in a public park, I believe there is no doubt but the City would have been held liable.

Municipalities have the right, under the police power, reasonably to control and regulate the use of their streets, and this, including traffic regulation, is a governmental function. And the installation and institution of the operation of traffic signal control lights at an intersection of a city would be a governmental function, no different in my view than would be the case as to the street construction prior to the opening of the surface thereof, and including the surfaces of its intersections, for use by the traveling public.

Now, as indicated, the maintenance of a street, once use thereof is instituted by the general public with the sanction of the governing body of the municipality wherein it lies, becomes a corporate duty of the municipality, and as to such the immunity of the municipality theretofore afforded as to governmental functions no longer applies. If the municipality is negligent in the repair of or in the maintenance of the surface of the street, and such negligence becomes the proximate cause of an injury to a member of the traveling public, the common-law rules of negligence apply, and the municipal corporation may be assessed damages for the injury. The law imposes the duty upon the municipal corporation to keep the street in a safe condition as one of its corporate functions. This obligation is based upon the principle that once a municipal corporation begins to act ministerially, it is bound to so act in a reasonable and safe manner.

This became the law in Texas as result of the decision of the Supreme Court of Texas in 1884 in the case of City of Galveston v. Posnainsky, 62 Tex. 118. In that case it is interesting to note that Chief Justice A. H. Willie, who had just returned to the court after absence of several years, did not participate in the opinion for the reason that in the trial court he had represented the City of Galveston, and indeed had filed in the Supreme Court a brief in that City's behalf, and which brief was a part of those considered by the court in reaching its conclusions. It is significant that by the decision of the court in that case, establishing the City's liability, Judge Willie's cause was the losing one on the issue of law before the court. In that case the appellee was a minor, who, as a result of falling into a neglected drain, suffered personal injuries by coming in contact with

a glass bottle inside the drain. It might be said that appellee fell into a trap, as a result of which an agency in the trap actually did the hurt.

Primarily, the errors urged on the appeal in the City of Galveston v. Posnainsky case were predicated upon the law of the case given to the jury by the trial court in its charge. In the charge the jury was instructed, "If the drain was a reasonably proper one * * * and the leaving it uncovered and unfenced * * * was not reasonably liable to result in injury to persons passing and using ordinary care, * * the defendant (city) would not be liable, * * *." The charge read further, "*The opening and repairing of streets is a matter of discretion in the city government; but when she undertakes to open or construct streets and travel ways, she must so construct them as to render their use reasonably safe to such persons as are naturally expected to use said ways, using such care as such persons ordinarily exercise.*" (Emphasis my own.)

The Supreme Court in its opinion quoted from an old Massachusetts case [Bigelow v. Inhabitants of Randolph, 14 Gray 541], the language of which repeated the general rule relating to the exemption of liability of a town or other quasi corporation for a neglect of duty, and followed by these words: " 'This rule of law, however, is of limited application. It is applied, in case of towns, only to the neglect or omission of a town to perform those duties which are imposed on all towns, without their corporate assent, and exclusively for public purposes; and not to the neglect of those obligations which a town incurs when a special duty is imposed on it, with its consent, express or implied, or a special authority is conferred on it at its request. In the latter cases, a town is subject to the same liabilities for the neglect of those special duties, to which private corporations would be if the same duties were imposed or the same authority were conferred on them—including their liability for the wrongful neglect as well as the wrongful acts of their officers and agents.' " The opinion of our own Supreme Court, going on to say that incorporated towns and cities have charters enacted at the request of those who are to be most directly benefitted by them and with a view to this end, and that the main and essential purpose for which they are created is the advantage of the inhabitants of the corporation, then stated as follows: "It would seem that, in so far as municipal corporations * * * exercise powers conferred on them for purposes essentially public—purposes pertaining to the administration of general laws made to enforce the general policy of the state,— they should be deemed agencies of the state, and not subject to be sued for any act or omission occurring while in the exercise of such power, unless, by statute, the action be given; that, in reference to such matters, they should stand as does sovereignty, whose agents they are, subject to be sued only when the state, by statute, declares they may be." Following this the opinion reads: "In so far, however, as they exercise powers not of this character, voluntarily assumed—powers intended for the private advantage and benefit of the locality and its inhabitants,—there seems to be no sufficient reason why they should be relieved from that liability to suit and measure of actual damage to which an individual or private corporation exercising the same powers for a purpose essentially private would be liable.

"*Persons or corporations that voluntarily assume and undertake the performance of a work, even though it be quasi public in its character, ought to be held to impliedly contract that they will exercise due care in its performance, and for a neglect in this respect should be liable for the resulting damage.*" (Emphasis mine.)

Based upon the reasoning of the Supreme Court in the City of Galveston v. Posnainsky case, and upon the holdings of the Illinois courts in the case of Johnston v. City of East Moline, 1949, 338 Ill.App. 220, 87 N.E.2d 22, affirmed by the Supreme Court of Illinois at 405 Ill. 460, 91 N.E.2d 401, in which case the question before the court was almost identical to that presently before us, the writer is of the opinion that the duty of the municipality to maintain a traffic signal control light directing flow of traffic over the surface of a street in safe

operating condition (that is, in condition reasonably calculated to prevent rather than to cause injury) would be no different from its obligation to maintain the street surface in safe condition. Once in operation, the signal light becomes an integral part of the street and intersection at which it was erected in so far as the use of such street and intersection for traveling purposes are concerned. It was on this theory of law that the Supreme Court of Florida, in 1943, divided four to three in the case of Avey v. City of West Palm Beach, 152 Fla. 717, 12 So.2d 881.

Indeed, such a traffic signal control light in the condition that the light in question was alleged to have been, constituted a highly dangerous agent, rendering the intersection, traffic at which it purported to direct, one where an accident was certain to occur with sufficient passage of time. Its maintenance in such condition amounted to a trap (analogous to the drain in the City of Galveston v. Posnainsky case), as result of which agencies (vehicles entering the intersection) therein would be even more certain to do hurt to users of the public way. In cases of analogy it has been held that municipal corporations are not exempt from the rule that one must use care commensurate with the danger in order to prevent injury as result of the use of a highly dangerous agent or instrumentality. 38 Am.Jur., p. 283, sec. 587, and cases there cited.

It is worthy of note that by Legislative enactment under the Uniform Act Regulating Traffic on Highways in Texas a traveling motorist is entitled to proceed straight through the intersection at which he encounters a traffic signal control light exhibiting the green or "go" signal, as in the case at hand. Vernon's T.R.C.S., Article 6701(d), sec. 33. Naturally the Legislature in enacting this article contemplated that the traffic signal control light would be in proper working order. Nevertheless, the rights and privileges of the traveling motorist were here prescribed by Legislative enactment of the same dignity as either the enactment which constituted the appellee a municipal corporate entity, or that which authorized the residents thereof to so constitute it, whichever might be the case as to the incorporation of the appellee.

It is acknowledged that a majority of jurisdictions have held that the maintenance of traffic signal control lights in proper order is a governmental function, and the cases reflect that the effect of many of the holdings is that the maintenance of such lights in improper order is likewise a governmental function. See cases in 161 A.L.R. 1404, et seq.

The question is one not heretofore passed upon in Texas, and the writer, cognizant of the fact that the modern tendency is to restrict rather than to extend the doctrine of municipal immunity, and subscribing to the principles thereof, believes that correct application of principles of law requires the extension of the corporate obligations of a municipality to this and future situations similarly arising. Presently recognized in the duty of a municipality is its obligation to maintain in safe condition the surface of a street. This duty, I believe, should be held to include as well the obligation to maintain in safe operating condition (when operating at all) a traffic signal control light indicating conditions as to safety (or contrariwise) of travel upon a particular part of the street surface purportedly controlled thereby. And this I especially believe should apply when by law of the state a traveler upon city streets is directed by such city's defective mechanical traffic signals into a position of great danger, when the city has had time, after notice of the defect, to correct the condition of hazard thereby created.

It is my conclusion that a logical extension of the principles of law established in the City of Galveston v. Posnainsky case, supra, should require the establishment in Texas of law as to the question presented here identical with that in effect in Illinois since 1950 by authority of the Supreme Court of that state in the case of Johnston v. City of East Moline, supra.

For these reasons I respectfully dissent.